IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

| | |
|---|---|
| MARCH NETWORKS CORPORATION and <br> MARCH NETWORKS, INC., <br> <br> Plaintiffs, <br> v. <br> <br> HAWK TECHNOLOGY SYSTEMS, LLC, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs March Networks Corporation and March Networks, Inc. (collectively, "March Networks") bring this action for declaratory judgment against Hawk Technology Systems, LLC ("Hawk"). March Networks seeks, among other things, declaratory judgment of non-infringement of U.S. Patent No. RE43,462 (the "'462 patent"), that certain claims of the '462 patent are invalid, and that March Networks has intervening rights with respect to the '462 patent. March Networks alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment of non-infringement and invalidity of and intervening rights with respect to the '462 patent.

**THE PARTIES**

2. Plaintiff March Networks Corporation is a Canadian corporation having a principal place of business at 303 Terry Fox Drive, Ottawa, Ontario K2K 3J1, Canada. March Networks is a manufacturer of IP video management solutions. March Networks' solutions are used by leading commercial and government organizations worldwide.

3. March Networks has been developing video surveillance technologies since 1996. The company's video management platforms provide flexibility for organizations of all sizes to deploy video management systems at their places of business. March Networks has been solely focused on the making, using, selling, and marketing of video management hardware and software since 2000.

4. Plaintiff March Networks, Inc. is a Delaware corporation with a registered address at The Pinnacle Building, Suite 500, 3455 Peachtree Road NE, Atlanta, Georgia 30326. March Networks, Inc. was established in 2006 and sells March Networks Corporation's video management hardware and software in the United States.

5. Upon information and belief, Defendant Hawk is a Florida limited liability company with a principal place of business at 2 South Biscayne Blvd., Suite 3800, Miami, Florida 33131.

6. Upon information and belief, Hawk was formed in 2012 and its business is directed to owning and enforcing the '462 patent in litigation.

**JURISDICTION AND VENUE**

7. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and under the Patent Laws of the United States, as enacted under Title 35 of the United States Code. This Court has jurisdiction over this action pursuant to 35 U.S.C. §§ 271 *et seq.* and 28 U.S.C. §§ 1331, 1338, and 2201-2202.

8. Hawk is subject to personal jurisdiction in this judicial district because Hawk resides in this district, has purposefully availed itself of the privilege of doing business in this judicial district, transacts business in this district, and has sufficient minimum contacts with Florida to render the exercise of jurisdiction over Hawk compatible with due process.

9. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1391(c), as well as 28 U.S.C. § 1400(b), as Hawk resides in this district and/or wrongful acts as alleged herein have occurred in this district.

## THE PATENT AT ISSUE

10. U.S. Patent No. 5,625,410 issued on April 29, 1997.  On April 28, 1999, a reissue application of U.S. Patent No. 5,625,410 was filed.

11. As part of the reissue application, the patentees declared that "our issued patent is at least partially inoperative or invalid in that we claim less than we had the right to claim."

12. During the prosecution of the reissue, the patent applicants amended the language and scope of the original claims of U.S. Patent No. 5,625,410 and also added new claims.

13. On June 12, 2012, U.S. Patent No. 5,625,410 was reissued as the '462 patent. (*See* Exhibit 1, attached hereto.)  The '462 patent is entitled "Video Monitoring and Conferencing System."  The '462 patent identifies the alleged inventors as Kinya Washino and Barry H. Schwab.

14. Hawk does not mark any products with the patent number of the '462 patent.

15. Hawk has not in any license, settlement, or other agreement required any licensee or other third party to mark products with the patent number of the '462 patent.

## HAWK'S ACTIVITIES

16. Hawk claims to be the owner by assignment of the '462 patent.

17. Upon information and belief, Hawk does not receive any profit from its alleged ownership of the '462 patent without obtaining licensing fees from other entities.

18. Since February 2013, Hawk has filed over seventy (70) lawsuits for infringement of the '462 patent in federal district courts throughout the United States.  Approximately fourteen of Hawk's patent infringement suits have been filed within the last three months.

19. Hawk has filed at least three infringement suits against parties that use or have used March Networks' video management products – Kum & Go, Inc. ("K&G"), Barnes & Noble College Booksellers, LLC ("Barnes & Noble"), and Retail Services & Systems, Inc. ("Retail Services").

20. Hawk sued K&G on or about December 30, 2014 (Case No. 1:14-cv-03505-MEH (D. Col.)).  A true and accurate copy of the complaint against K&G is attached hereto as Exhibit 2.

21. Hawk sued Barnes & Noble on or about February 2, 2015 (Case No. 2:15-cv-10426-DML-RSW (E.D. Mich.)).  A true and accurate copy of the complaint against Barnes & Noble is attached hereto as Exhibit 3.

22. Hawk sued Retail Services on or about February 2, 2015 (Case No. 1:15-cv-20386-JEM (S.D. Fla.)).  A true and accurate copy of the complaint against Retail Services is attached hereto as Exhibit 4.

23. Barnes & Noble and Retail Services (doing business as Total Wine & More) are identified in publications that can be found on March Networks' website and which are attached as Exhibits to Hawk's Complaints against Barnes & Noble and Retail Services.  (*See* Exhibit 3 at Ex. A; Exhibit 4 at Ex. A.)

24. Hawk at least learned about Barnes & Noble's and Retail Services' use of video management products from March Networks' website.  On information and belief, Hawk learned of K&G's use of video management products through publications available on the internet that discuss K&G's use of such products.

25. The Barnes & Noble article is attached as Exhibit A to Hawk's Complaint against Barnes & Noble.  (*See* Exhibit 3 at Ex. A.)  The "video storage and display system" identified in

Exhibit A and paragraph 20 of Hawk's Complaint against Barnes & Noble as allegedly infringing the '462 patent includes March Networks' video management products.

26. The Retail Services article is attached as Exhibit A to Hawk's Complaint against Barnes & Noble.  (*See* Exhibit 4 at Ex. A.)  The "video storage and display system" identified in Exhibit A and paragraph 22 of Hawk's Complaint against Retail Services as allegedly infringing the '462 patent includes March Networks' video management products.

27. Hawk also provided a claim chart as Exhibit B to its Complaint against Retail Services that described element-by-element Hawk's allegations of infringement of three independent claims of the '462 patent, claims 1, 12, and 15.  (*See* Exhibit 4 at Ex. B.)

28. The claim chart is titled "Hawk Technology Systems, LLC v. Retail Services & Systems, Inc."  Other than this header, there is no mention of Retail Systems anywhere in the 29-page claim chart.  (*See id.*)

29. The chart is broken down into four columns: "Independent Claim No. X"; "Hawk USP RE43,462 E"; "Product Disclosure"; and "Comments & Reference."  (*See id.*)

30. In nearly every row of the claim chart, components of March Networks' video management products are listed and described in the "Product Disclosure" column.  (*See id.*)

31. Before each recitation of March Networks' products in the "Product Disclosure" column, Hawk uses the term "Practiced," indicating that users of March Networks' video management systems are alleged to practice the identified element of the patent claim.  (*See id.*)

32. In nearly every row of the claim chart, March Networks' video management systems are referenced in the "Comments and Reference" column.  (*See id.* (identifying "March Networks' "Command Video Management Software," "Command DecodeStation VX," and "Command Recording Server (CRS) software").)

33. In addition, in every row of the claim chart, urls are provided to March Networks' website, including March Networks' brochures, specification sheets, and product reference information. (*See id.*)

34. Excerpts from the March Networks website describing its product's functionality also are included within the "Product Disclosure" column of the claim charts. (*See id.*)

35. Hawk identifies March Networks' products in nearly every element of every independent claim in Hawk's claim chart. No other company's products are mentioned by name or referenced in the chart. No other company's brochures, information, or websites are referenced in the chart. (*See id.*)

36. Hawk's repeated identification of March Networks' video management products indicates that Hawk considers March Networks' products to infringe the '462 patent and to be material components of the alleged infringement of the '462 patent by Retail Services, and that March Networks has at a minimum induced and/or contributed to infringement of the '462 patent through the sale of its video management products.

37. Since shortly after claiming ownership rights, Hawk has employed an aggressive litigation strategy with respect to the enforcement of the '462 patent against perceived infringers.

38. Upon information and belief, Hawk will initiate suit against March Networks for patent infringement. Upon information and belief, Hawk will continue to initiate suits against users of March Networks' video management products for patent infringement.

39. Unless enjoined, Hawk's actions against March Networks and its customers threaten irreparable harm for which there is no adequate remedy of law.

40. Based on the foregoing, there is a substantial and justiciable controversy between March Networks and Hawk that warrants declaratory judgment.

## COUNT ONE – DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '462 PATENT

41. March Networks repeats and realleges paragraphs 1-40 as if fully set forth herein.

42. Hawk claims to be the owner of all legal rights, title, and interest in the '462 patent, including the right to enforce the '462 patent.

43. Hawk attached an infringement claim chart to a Complaint against a user of March Networks' products. The claim chart alleges that use of March Networks' video management products, in conjunction with standard, unidentified computer systems and hardware, infringes the '462 patent.

44. Hawk's claim chart specifically identifies and references March Networks' product suite as practicing essential elements of the '462 patent's claims. Hawk reinforces this assertion through repeated references to March Networks' website, product brochures, and data sheets.

45. Hawk's assertions in its claim chart indicate Hawk believes March Networks is liable for direct and indirect infringement of the '462 patent.

46. The products provided by March Networks to its customers and utilized by its customers do not infringe, either directly, indirectly, or contributorily, any valid claim of the '462 patent.

47. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

48. An actual and justiciable controversy exists between March Networks and Hawk as to whether the '462 patent is infringed by March Networks. A judicial declaration is

necessary and appropriate so that March Networks may ascertain its rights regarding the '462 patent.

49. March Networks is entitled to further necessary or proper relief based on the Court's declaratory judgment or decree.

## COUNT TWO – DECLARATORY JUDGMENT OF INVALIDITY OF THE '462 PATENT

50. March Networks repeats and realleges paragraphs 1-49 as if fully set forth herein.

51. March Networks contends that one or more claims of the '462 patent are invalid and/or unenforceable for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. § 1, *et seq.*, including but not limited to §§ 101, 102, 103, and/or 112.

52. As one example, at least claims 1, 12, and 15 of the '462 patent are invalid under 35 U.S.C. § 102 as anticipated by at least U.S. Patent No. 5,237,408 to Blum *et al.*, filed August 2, 1991, and/or U.S. Patent No. 5,375,068 to Palmer *et al.*, filed June 3, 1992.

53. Further, claims 1, 12, and 15 are invalid under 35 U.S.C. § 103 as obvious over the above-mentioned patents in combination with each other, or in combination with at least U.S. Patent No. 6,335,722 to Tani *et al.*, filed October 24, 1994.

54. As another example, at least claims 1 and 15 of the '462 patent are invalid under 35 U.S.C. § 112(b) for indefiniteness because they each recite at least one means-plus-function claim element for which no corresponding structure is disclosed sufficiently in the '462 patent specification in accordance with 35 U.S.C. § 112(f).

55. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

56.     An actual and justiciable controversy exists between March Networks and Hawk with respect to whether the '462 patent is invalid.  A judicial declaration is necessary and appropriate so that March Networks may ascertain its rights regarding the '462 patent.

57.     March Networks is entitled to further necessary or proper relief based on the Court's declaratory judgment or decree.

### COUNT THREE – DECLARATORY JUDGMENT OF INTERVENING RIGHTS

58.     March Networks repeats and realleges paragraphs 1-57 as if fully set forth herein.

59.     As of June 12, 2012, when the '462 patent was reissued, March Networks had invested years of effort to develop its video management products, including twelve years solely in the development of video management hardware and software.  March Networks has grown to a company with approximately 250 employees and multi-million dollar annual revenues.

60.     Each of the original claims of the '462 patent was amended during reissue.

61.     Each of the amended and new claims of the '462 patent is not substantially identical to the claims of the patent as originally issued.

62.     Hawk admitted the claims of the '462 patent are not substantially identical to the claims of the patent as originally issued when Hawk filed a malpractice suit against the attorneys that prosecuted the reissue that ultimately became the '462 patent. (*See* Complaint, attached hereto as Exhibit 5.)

63.     In that malpractice complaint, Hawk stated that "the Firm needlessly and negligently altered the text of the '410 patent's independent claims in such a manner that they are no longer identical to the original claims" and that the claims were unnecessarily broadened. (*See id.* at ¶¶10-11.)

64. March Networks is entitled to absolute and equitable intervening rights pursuant to 35 U.S.C. § 252.

65. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

66. An actual and justiciable controversy exists between March Networks and Hawk with respect to whether March Networks has absolute and/or equitable intervening rights. A judicial declaration is necessary and appropriate so that March Networks may ascertain its rights.

67. March Networks is entitled to further necessary or proper relief based on the Court's declaratory judgment or decree.

**PRAYER FOR RELIEF**

WHEREFORE, March Networks respectfully requests the following relief:

(a) A declaration that March Networks has not and is not infringing, either directly, indirectly, or contributorily, any valid claim of the '462 patent, as requested by Count I of this action;

(b) A declaration that the '462 patent is invalid, as requested by Count II of this action;

(c) A declaration that March Networks has intervening rights pursuant to 35 U.S.C. § 252 with respect to the '462 patent, as requested by Count III of this action;

(d) An award of all damages, including special damages, provable at trial;

(e) An order enjoining Hawk, its officers, directors, agents, counsel, servants, and employees, and all persons in active concert or participation with any of them, from charging infringement or instituting any action for infringement of the '462 patent against March

Networks and/or any of March Networks' customers or downstream users of March Networks' products;

(f) An order declaring that March Networks is the prevailing party and that this is an exceptional case under 35 U.S.C. § 285 and awarding March Networks its costs, including attorneys' fees, in connection with this action; and

(g) Such other relief as the Court may deem just and proper.

Dated: February 17, 2015

/s/ Johanna Oliver Rousseaux
Johanna Oliver Rousseaux
jorousseaux@jonesday.com
Florida Bar No. 598321
JONES DAY
600 Brickell Avenue
Brickell World Plaza
Suite 3300
Miami, FL  33131
Tel.:  (305) 714-9700
Fax:  (305) 714-9799

OF COUNSEL:

Geoffrey Gavin
ggavin@jonesday.com
J. Jason Williams
jjwilliams@jonesday.com
JONES DAY
1420 Peachtree Street, NE, Suite 800
Atlanta, GA  30309-3053
Tel: (404) 521-3939
Fax: (404) 581-8330

ATTORNEYS FOR PLAINTIFFS
MARCH NETWORKS CORPORATION AND
MARCH NETWORKS, INC.